*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

**No. 23-55116**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

---

BETH BOWEN,

*Plaintiff-Appellant,*

v.

ENERGIZER HOLDINGS, INC., ET AL.

*Defendants-Appellees.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
No. 2:21-CV-04356-MWF-AGR**

**THE HONORABLE MICHAEL W. FITZGERALD**

---

**APPELLANT'S OPENING BRIEF
ORAL ARGUMENT REQUESTED**

---

R. Jason Richards
Aylstock, Witkin, Kreis &
Overholtz, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone (850) 202-1010
Facsimile (850) 916-7449
Email: jrichards@awkolaw.com

Kiley Lynn Grombacher
Bradley Grombacher, LLP
31365 Oak Crest Drive, Suite 240
Westlake Village, CA 91361
Telephone: (805) 270-7100
Email:
kgrombacher@bradleygrombacher.com

*Counsel for Plaintiff-Appellant, Beth Bowen*

*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

## CERTIFICATE OF INTERESTED PARTIES

Pursuant to Federal Rule of Civil Procedure 26.1 and Ninth Circuit Rule 21-3, counsel for Plaintiff-Appellant Beth Bowen certifies that the following have an interest in the outcome of this appeal.

Aylstock, Witkin, Kreis & Overholtz, PLLC – Counsel for Plaintiff/Appellant

Bowen, Beth – Plaintiff/Appellant

Crisafulli, Ashley Marie - Counsel for Defendants/Appellees

Edgewell Personal Care Brands, LLC - Defendant/Appellee

Edgewell Personal Care Company - Defendant/Appellee

Edgewell Personal Care, LLC - Defendant/Appellee

Energizer Holdings, Inc. - Defendant/Appellee

Fitzgerald, Michael W. - United States District Judge, CDCA, Western Division

Grombacher, Kiley Lynn – Counsel for Plaintiff/Appellant

Katerndahl, John P. - Counsel for Defendants/Appellees

Liu, Sin-Ting Mary – Counsel for Plaintiff/Appellant

McCurdy, Megan - Counsel for Defendants/Appellees

Moticka, John W. - Counsel for Defendants/Appellees

Playtex Products, LLC. - Defendant/Appellee

Richards, R. Jason - – Counsel for Plaintiff/Appellant

Sun Pharmaceuticals, LLC - Defendant/Appellee

*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

Dated: June 13, 2023

/s/R. Jason Richards
R. Jason Richards
Aylstock, Witkin, Kreis &
Overholtz, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone (850) 202-1010
Facsimile (850) 916-7449
Email: jrichards@awkolaw.com

*Counsel for Plaintiff-Appellant*

*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument would assist the Court in evaluating this appeal.

Plaintiff/Appellant requests that each side be allotted a minimum of 30 minutes

for oral argument, with Plaintiff/Appellant permitted to divide that time between

opening argument and rebuttal at their discretion.

Dated: June 13, 2023

/s/R. Jason Richards
R. Jason Richards
Aylstock, Witkin, Kreis &
Overholtz, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone (850) 202-1010
Facsimile (850) 916-7449
Email: jrichards@awkolaw.com

*Counsel for Plaintiff-Appellant*

*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS........................................................ i

STATEMENT REGARDING ORAL ARGUMENT............................................ iii

TABLE OF CONTENTS……………………....................................................... iv

TABLE OF AUTHORITIES.................................................................................. v

INTRODUCTION ................................................................................................1

JURISDICTIONAL STATEMENT ......................................................................3

REGULATORY AUTHORITIES .........................................................................3

ISSUES PRESENTED...........................................................................................4

STATEMENT OF THE CASE..............................................................................5

ARGUMENT ......................................................................................................11

   1.   The district court erred in dismissing Plaintiff's claims for lack of Article III standing by not construing all disputed facts in Plaintiff's favor........................11

   2.   The district court erred in dismissing Plaintiff's increased risk of harm claim and economic loss claim for lack of Article III standing. ...................................13

   3.   The district court erred in relying on non-binding and contradictory FDA guidance. ..........................................................................................................23

   4.   The district court erred in not permitting Plaintiff to pursue discovery as to jurisdictional facts that go to the merits of her claims........................................26

CONCLUSION ...................................................................................................30

*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

CERTIFICATE OF COMPLIANCE ......................................................................31

CERTIFICATE OF SERVICE ................................................................32

*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

# TABLE OF AUTHORITIES

## Cases

*American Fireglass v. Moderustic Inc.*,
  2016 WL 3971396 (S.D. Cal. July 25, 2016) ..................................................... 12

*Arizona Dream Act Coalition v. Brewer*,
  757 F.3d 1053 (9th Cir. 2014)............................................................................. 25

*Barnes v. Unilever United States, Inc.*,
  2022 WL 2915629,n.1 (N.D. Ill. July 24, 202)................................................... 16

*BBK Tobacco & Foods, LLP v. U.S. Food & Drug Admin.*,
  672 F. Supp. 2d 969 (D. Ariz. 2009)................................................................... 24

*Biovail Laboratories Inc. v Anchen Pharmaceuticals Inc.*,
  2006 WL 8071250................................................................................................ 25

*Birdsong v. Apple, Inc.*,
  590 F.3d 955 (9th Cir. 2009)......................................................................... 17, 18

*Bowen v. Energizer Holdings, Inc.*,
  2023 WL 1786731 (C.D. Cal. Jan. 5, 2023) ................................................. 13, 16

*Boysen v. Walgreens, Co.*,
  2012 WL 2953069 (N.D. Cal. July 19, 2012)............................................... 17, 18

*Cal. Trout, Inc. v. U.S. Bureau of Reclamation*,
  115 F. Supp. 3d 1102 (C.D. Cal. 2015) .............................................................. 11

*Christensen v. Harris Cty.*,
  529 U.S. 576 (2000) ............................................................................................ 25

*Clinger v. Edgewell Personal Care Brands, LLC*,
  2023 WL 2477499 (D. Conn. March 13, 2023).......................... 13, 16, 19, 21, 27

*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

*Dana v. Hershey Co.*,
  180 F.Supp.3d 652 (N.D. Cal. 2016) .................................................. 20

*Degelmann v. Advanced Medical Optics, Inc.*,
  659 F.3d 835 (9th Cir. 2011) .............................................................. 18

*Dreier v. U.S.*,
  106 F.3d 844 (9th Cir. 1996) ........................................... 2, 11, 12, 13, 15

*Franz v. Beiersdorf, Inc.*,
  2019 WL 2192635 (S.D. Cal. May 21, 2019) ..................................... 25

*Greene v. U.S.*,
  207 F.Supp.2d 1113 (E.D. Cal. 2002) ................................................ 12

*Gagetta v. Walmart, Inc.*,
  __ F.Supp.3d __, 2022 WL 17812924 (N.D. Cal. Dec. 19, 2022) ......... 16, 21, 28

*Hall v. Norton*,
  266 F.3d 969 (9th Cir. 2001) .............................................................. 20

*Hamman v. Cava Group., Inc.*,
  2023 WL 3450654 (S.D. Cal. Feb. 8, 2023) ....................................... 21

*Harris v. Board of Supervisors, Los Angeles County*,
  366 F.3d 754 (9th Cir. 2004) .............................................................. 20

*Henning v. Luxury Brand Partners, LLC*,
  2023 WL 3555998 (N.D. Cal. May 11, 2023) ..................................... 28

*Herrington v. Johnson & Johnson Consumer Companies, Inc.*,
  2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) ................................. 17, 18

*Hinojos v. Kol's Corp.*,
  718 F.3d 1098 (9th Cir. 2013) .................................. 2, 15, 16, 17, 20, 23

*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

*In re Facebook Privacy Litigation*,
   791 F.Supp.2d 705 (N.D. Cal. 2011) .................................................................. 11

*Kosta v. Del Monte Corp*.,
   2013 WL 2147413 (N.D. Cal. May 15, 2013) ..................................................... 18

*Kwikset Corp. v. Superior Court*,
   51 Cal.4th 310, 120 Cal.Rptr.3d 741 ............................................ 2, 15, 17, 22, 23

*LeGrand v. Abbott Lab'ys*,
   __ F.Supp.3d __, 2023 WL 1819159 (N.D. Cal. Feb. 23, 2023) ........................... 22

*Maya v. Centex Corp.*,
   658 F.3d 1060 (9th Cir. 2011) .................................................................. 2, 15, 23

*Miller v. Ghirardelli Chocolate Co.*,
   912 F. Supp. 2d 861 (N.D. Cal. 2012) ................................................................. 22

*Moreno v. Vi-Jon, LLC*,
   2022 WL 17668457 (9th Cir. Dec. 14, 2022) ................................................. 22, 23

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035, 1039 (9th Cir. 2004) ................................................................... 29

*Tennessee Hosp. Assoc. v. Price,*
   2017 WL 2703540 (M.D. Tenn. June 21, 2017) .................................................. 25

*Vera v. Bureau of Indian Affairs*,
   738 Fed. Appx. (9th Cir. 2018) ....................................................................... 2, 29

*Victor v. R.C. Bigelow, Inc*.,
   2014 WL 1028881 (N.D. Cal. Mar. 14, 2014) ..................................................... 18

*Western Radio Services Co. Inc. v. Espy*,
   79 F.3d 896 (9th Cir. 1996) ................................................................................. 25

*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

**Statutes**

28 U.S.C. §1346 .................................................................................................. 3

28 U.S.C. § 1332(d)(2)........................................................................................ 7

29 U.S.C § 1291 ................................................................................................. 3

**Rules**

Fed. R. Civ. P. 12(b)(1)........................................................... 4, 8, 10, 11, 12, 23, 29

Fed. R. Civ. P. 12(b)(6)......................................................................................... 8, 10

*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

## INTRODUCTION

Consumers make inherently personal and conscious decisions every day in the products they choose to purchase. These choices may be based on religion (e.g., selecting kosher meats), the environment (e.g., opting for organic produce), health and safety (e.g. avoiding products with potentially harmful substances), or simply personal preference. While such conscious decision-making may seem unusual or even "absurd" to unlike-minded individuals, it is quite reasonable and "logical" to others. If, for instance, a consumer has a choice between two similar aerosol consumer products—one that contains or risks containing a cancer-causing chemical and one that doesn't—is it reasonable for the consumer to choose the product without the cancer-causing chemical? Of course it is. And, because such a decision—to avoid the exposure or risk of exposure to a human carcinogen—is as deeply important as it is deeply personal, it necessarily affects the consumer in a personal and individual way.

The "consumer" in this example is Beth Bowen (hereafter "Plaintiff" or "Ms. Bowen"). Ms. Bowen has been denied the opportunity to make informed health-and-safety-related purchasing decisions by Defendants, who deliberately or recklessly manufactured and sold Banana Boat sunscreen products containing benzene, a known human carcinogen, without disclosing that fact to consumers. Ms. Bowen alleged she purchased Defendants' sunscreen products and was directly exposed to

benzene at levels she says may be harmful. Her allegations of benzene contamination were supported by testing performed on her own Banana Boat sunscreen product and additional testing performed by Valisure, a testing laboratory. Simply stated, Ms. Bowen has standing to pursue her claims against Defendant because she plausibly alleged that she would not have purchased the sunscreen products had she known the products contained benzene or risked containing benzene. *See Kwikset Corp. v. Superior Court,* 51 Cal.4th 310, 120 Cal.Rptr.3d 741 P.3d 877 (2011); *Hinojos v. Kol's Corp.*, 718 F.3d 1098 (9th Cir. 2013). Indeed, a "quintessential injury-in-fact" occurs when the "plaintiffs spent money that, absent defendants' actions, they would not have spent." *Maya v. Centex Corp.,* 658 F.3d 1060, 1069 (9th Cir. 2011).

Respectfully, the district court erroneously concluded that Ms. Bowen lacked standing because it failed to construe her allegations in the light most favorable to her. *See Dreier v. U.S.*, 106 F.3d 844 (9th Cir. 1996). Compounding this error, the district court also refused to permit Ms. Bowen the opportunity to pursue discovery as to jurisdictional facts that were intertwined with the merits of her claims, but were outside her knowledge or control. *See Vera v. Bureau of Indian Affairs*, 738 Fed. Appx. 432 (9th Cir. 2018). For these reasons, the district court's finding that Ms. Bowen lacked Article III standing must be reversed.

*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

## JURISDICTIONAL STATEMENT

The United States Federal district trial court has original subject matter jurisdiction over this case because the United States is a defendant pursuant to 28 U.S.C. §1346. This Court has jurisdiction pursuant to 29 U.S.C § 1291 because this is an appeal of a final decision of the trial court. On January 5, 2023, the trial court granted Defendants' motion to dismiss Second Amended Complaint ("SAC") and entered final judgment in favor of Defendants. On February 3, 2023, Plaintiff filed her Notice of Civil Appeal. [Doc. 86]. This is an appeal from a final order and there are no issues pending relating to this case in the lower court.

## REGULATORY AUTHORITIES

The Food & Drug Administration ("FDA") follows the International Conference on Harmonization (ICH) Q3C *Impurities: Residual Solvents* guidelines for Class 1 residual solvents, which provides:

### 4. LIMITS OF RESIDUAL SOLVENTS

### 4.1 Solvents to Be Avoided

Solvents in Class 1 [e.g. benzene] should not be employed in the manufacture of drug substances, excipients, or drug products because of their unacceptable toxicity and their deleterious environmental effect. However, if their use is unavoidable in order to produce a drug with a significant therapeutic advance, then their levels should be restricted [to 2 parts per million], unless otherwise justified.

3

*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

*Impurities: Guidelines for Residual Solvents (Q3c (R8)*, International Council for Harmonisation of Technical Requirements for Pharmaceuticals for Human Use, 2021 ("ICH Q3C"). (1-ER-008-009; 3-ER-369).

## ISSUES PRESENTED

1. Whether the district court erred by not construing all disputed facts in favor of the non-moving party when it was confronted with a Rule 12(b)(1) "factual" challenge to subject matter jurisdiction and relied on evidence outside the pleadings.

2. Whether the lower court erred in dismissing Plaintiff's injury claims for lack of Article III standing where the SAC alleges that she was exposed to unsafe levels of benzene from Defendants' products, she would not have purchased the products had she had known the risk, and that the products' labeling wrongfully failed to warn consumers of the risk.

3. Whether the district court erred in relying on non-binding FDA guidance contained on the agency's website to decide contested issues of fact going to the merits of Plaintiff's claims.

4. Whether it was error for the lower court to dismiss Plaintiff's claims for lack of Article III standing without allowing discovery into contested issues of fact going to the merits of the claims.

*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

## STATEMENT OF THE CASE

This appeal concerns whether a consumer who was unknowingly exposed to a human carcinogen in Defendants' sunscreen products has standing to sue. Between 2017 and 2020, Ms. Bowen purchased and used several different Banana Boat brand sunscreen products manufactured by Defendants, including Ultra Sport 100, Ultra Sport 50, and Ultra Sport 30. (3-ER-360). Thereafter, on May 25, 2021, Valisure, a testing laboratory, filed a citizen petition with the FDA requesting a recall of several Banana Boat sunscreen products due to the presence of benzene. (3-ER-371). As alleged in her SAC, benzene is a known human carcinogen that induces damage to DNA. (3-ER-367). It can be absorbed by inhalation and through the skin into the bloodstream. (3-ER-368; 3-ER-373). Moreover, the application of sunscreen increases the absorption rate of benzene through the skin, thereby increasing the risk of harm. (3-ER-368). Even in trace amounts, benzene is known to pose a health risk. (3-ER-373). Thus, there is "no safe level of benzene" exposure. (3-ER-378; 3-ER-389).

Due to its known carcinogenic properties, Valisure requested that the FDA recall all batches of Banana Boat sunscreen products that were analyzed and found to contain 0.1 parts per million ("ppm") or more benzene on the basis that exposure to such levels posed a risk to human health. (3-ER-362-363). Among the products tested by Valisure and found to contain 0.1 ppm or more benzene was a bottle of

*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

Banana Boat Ultra Sport 100—the same type of product purchased by Ms. Bowen. (3-ER-370). Although Ms. Bowen had already used and disposed of her bottles of Banana Boat Ultra Sport 100 and Ultra Sport 30 products by the time of Valisure's petition, she still had sunscreen product remaining in her bottle of Ultra Sport 50— a product not subjected to testing in Valisure's petition. (3-ER-362). Plaintiff submitted that bottle for testing, and the results showed that Ms. Bowen's Banana Boat Ultra Sport 50 contained 0.29 ppm of benzene. (3-ER-362).

Sunscreen products are regulated by the FDA as drugs. (3-ER-375). In regulating sunscreen products, the FDA follows the International Conference on Harmonization (ICH) Q3C *Impurities: Guidelines for Residual Solvents*. (3-ER-369; 1-ER-008). The ICH Q3C guidelines classify benzene as a Class 1 solvent, meaning it is a "carcinogen."[1] (3-ER-091-092; 1-ER-011). The ICH Q3C guidelines specifically provide:

### 4.     LIMITS OF RESIDUAL SOLVENTS

#### 4.1     Solvents to Be Avoided

Solvents in Class 1 [e.g. benzene] should not be employed in the manufacture of drug substances, excipients, or drug products because of their unacceptable toxicity and their deleterious environmental effect. However, if their use is

---

[1] The FDA also independently recognizes that "[b]enzene is a known human carcinogen that causes leukemia and other blood disorders." FDA Alert 12/23/22, available at https://www.fda.gov/drugs/pharmaceutical-quality-resources/fda-alerts-drug-manufacturers-risk-benzene-contamination-certain-drugs. This is the same FDA alert the district court relied upon in granting dismissal.

*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

> unavoidable in order to produce a drug with a significant
> therapeutic advance, then their levels should be restricted
> [to 2 ppm], unless otherwise justified.

(1-ER-008-009; 3-ER-369).

Ms. Bowen filed her operative SAC on September 22, 2022 under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), alleging that the presence of benzene or the risk of benzene contamination in Defendants' sunscreen products renders the products misbranded and/or adulterated and defective under California law. (3-ER-357-402). Citing the FDA's ICH Q3C guidelines, Ms. Bowen alleged that the FDA does not permit benzene to be used in the manufacture of sunscreen products because of its unacceptable toxicity. (3-ER-373). She further alleged that Defendants did not meet the "safe harbor" exception under the ICH Q3C guidelines because the use of benzene in sunscreens is not "unavoidable in order to produce a drug with a significant therapeutic advance." (3-ER-374).

Ms. Bowen asserted several independent injuries for Article III standing purposes. ***First***, she alleged she suffered an increased risk of harm from her actual exposure, and the risk of exposure, to a known human carcinogen (benzene). (3-ER-361; 2-ER-095). She relied on the test results from her bottle of Ultra Sport 50 that showed 0.29 ppm of benzene (actual exposure) and the results from Valisure that found >0.1 ppm of benzene in its testing Ultra Sport 100 (risk of exposure). (3-ER-362-363; 2-ER-094; 2-ER-097). ***Second***, she alleged she suffered economic

7

*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

harm from purchasing defective and unsafe products that she would not otherwise have purchased, or would have paid less for, absent Defendants' misrepresentations. (3-ER-361). ***Third***, she asserted standing with respect to all of the sunscreen products she purchased (and the other sunscreens not purchased by her) on the basis that *all* such products are marketed in substantially the same way—as "sunscreen"—and *all* such products contain the same defective labeling in that they do not disclose the presence of benzene, in violation of California's consumer protection laws. (3-ER-379; 3-ER-398-399; 2-ER-097-098).

On September 23, 2022, Defendants moved for dismissal under both Rule 12(b)(1) and Rule 12(b)(6). Defendants lodged a "factual" attack on the court's Rule 12(b)(1) subject matter jurisdiction. (2-ER-161-164). Defendants argued that Ms. Bowen lacked Article III standing because she had not alleged an injury-in-fact—specifically, a non-speculative injury. (2-ER-161-164). Defendants first asserted that Ms. Bowen's allegations misconstrued the ICH Q3C guidelines, claiming the guidelines impliedly require intent, such that they only apply to manufacturers who "purposefully" use Class 1 solvents. (2-ER-174-175). Defendants also relied upon an "alert" and "Frequently Asked Questions ("FAQ") posted on the FDA's website for the proposition that the FDA allows drug manufacturers to use up to 2 ppm of benzene as residual solvents in sunscreens. (2-ER-175). Because the levels of benzene detected in the sunscreens purchased by

8

*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

Ms. Bowen were less than the 2 ppm allowed by the FDA, Defendants claimed Ms.

Bowen could not plausibly allege that she had spent money on an unsafe or

defective product or been exposed to an increased risk of harm. (2-ER-175).

At oral argument on the motion to dismiss, the court summarized

Defendants' standing argument to Plaintiff's counsel this way: "given that the FDA

does allow the 2 parts per million [of benzene], the allegations that Ms. Bowen is

making about herself are absurd." (4-ER-837). The court continued, in its own

words this time: "Stepping back from all this, I mean, we all know what is going

on. The idea that Ms. Bowen has been harmed in any real sense frankly is so far-

fetched, it's just unbelievable." (4-ER-834-835). Plaintiff's counsel disagreed with

the court's characterizations, stating:

> In our mind, if you go into CVS, and you are looking at
> sunscreen from Banana Boat, and they have 10
> sunscreens, [and] you don't know which of the 10 has
> benzene in it, is a reasonable consumer going to take a
> chance, and as I put in the complaint, play Russian
> Roulette with getting exposed to a carcinogen just to use
> sunscreen, or do they pick out one that doesn't have
> benzene? That is not absurd to me.
>
> So when my client says that she would not have
> purchased a [sunscreen] product that has a carcinogen in
> it, that she wasn't advised of, that is not absurd to us. That
> is logical to us.
>
> There are things that maybe you do take risks on because
> you need the medication, or you need something. But to
> say that a consumer would blindly pick a [sunscreen]

*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

> product, not knowing which one has a carcinogen in it or
> not, is an odd result.

(4-ER-838).

On January 5, 2023, the district court granted Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(1), concluding that Plaintiff lacked Article III standing. (1-ER-017). The district court did not address any arguments under Fed. R. Civ. P. 12(b)(6) or apply the summary judgment standard, even though the court acknowledged at the hearing that "there are specific allegations [by Ms. Bowen] which, you know, in an ordinary Rule 12(b)(6) context would carry quite a bit of weight." (4-ER-844).

In resolving Defendants' Rule 12(b)(1) factual attack on jurisdiction in favor of Defendants, the district court considered evidence outside the pleadings—the FDA's alert and FAQ—but did not accept Ms. Bowen's factual allegations as true. Specifically, the district court held: "In light of the Food and Drug Administration guidelines permitting 2 ppm of benzene in sunscreen, Plaintiff does not allege facts that tend to show a non-speculative increased health risk or actual economic harm." (1-ER-002). Relying on the FDA's alert cited by Defendants, the court found that the alert "suggests that the Defendants' products are safe as alleged" and "implies" that Defendants may continue to release sunscreen products that "contain less than 2 ppm of benzene." (1-ER-007; 1-ER-010). Similarly, the court found

that the FDA's FAQ guidance supported the existence of a 2 ppm limit for benzene in sunscreens. (1-ER-009-010).

Moreover, the court denied Ms. Bowen discovery into Defendants' jurisdictional arguments prior to dismissing her case on lack of Article III standing. Instead, the district court opted to engage in a highly fact-specific evaluation of the safety risks posed of benzene, and adopted non-binding guidance posted on the FDA's website which, according to the court, "make[s] it clear that the FDA's 2 ppm benzene limit applies to Defendants." (1-ER-010). This was error.

## ARGUMENT

### 1. The district court erred in dismissing Plaintiff's claims for lack of Article III standing by not construing all disputed facts in Plaintiff's favor.

When a district court considers items outside the pleadings in ruling on a Rule 12(b)(1) motion, all material facts in dispute must be resolved in favor of the non-moving party. *See Dreier v. U.S.*, 106 F.3d 844, 847 (9th Cir. 1996) ("[W]e will consider items outside the pleading that were considered by the district court in ruling on the 12(b)(1) motion, but resolve all disputes of fact in favor of the non-movant"); *See also Cal. Trout, Inc. v. U.S. Bureau of Reclamation*, 115 F. Supp. 3d 1102, 1109 (C.D. Cal. 2015) ("In the absence of an evidentiary hearing, disputed facts relevant to subject matter jurisdiction are viewed in the light most favorable to the nonmoving party") (citing *Dreier*); *In re Facebook Privacy Litigation*, 791 F.Supp.2d 705, 710 (N.D. Cal. 2011) ("[I]n the absence of a full-fledged

11

*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

evidentiary hearing, disputes in the facts pertinent to subject-matter [jurisdiction] are viewed in the light most favorable to the opposing party") (citing *Dreier*); *American Fireglass v. Moderustic Inc.*, 2016 WL 3971396, at *5 (S.D. Cal. July 25, 2016) (citing *Dreier* for proposition that where courts consider matters outside the pleadings on a Rule 12(b)(1) motion, they "resolve all disputes of fact in favor of the non-movant"). In other words, "[t]he disputed facts related to subject matter jurisdiction should be treated in the same way as one would adjudicate a summary judgment motion." *Greene v. U.S.*, 207 F.Supp.2d 1113, 1119 (E.D. Cal. 2002) (citing *Dreier*).

Here, the district construed the motion to dismiss as a "factual" attack on jurisdiction under Rule 12(b)(1) and considered evidence outside the pleadings—specifically the FDA's alert and FAQ. The district court even acknowledged the existence of disputed facts, noting that "the parties disagree over whether the FDA's 2 ppm limit applies to Defendants' sunscreens," but still failed to construe Plaintiff's version of the facts in the light most favorable to her. (1-ER-008). For instance, the district court did not accept as true Plaintiff's allegations that: (1) the FDA's ICH Q3C guidelines did not permit the use of benzene in drugs due to their unacceptable toxicity; (2) the ICH Q3's "safe harbor" exception did not apply because the use of benzene in sunscreens is not unavoidable in order to produce a drug with a significant therapeutic advance; or (3) that there is no safe level of

12

*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

benzene exposure so benzene is harmful at the levels detected in the products purchased by Ms. Bowen.

Instead, the lower court relied upon an FDA alert which, according to the court, "implies" that using up to 2 ppm benzene in sunscreens is allowed and further "suggests" that Defendants' sunscreens are "safe." (1-ER-007; 1-ER-010). But, as argued by Plaintiff below, the FDA alert cannot be construed so definitively. To illustrate, the alert also clearly states that "[c]onsistent with the recommendations of the ICH Q3C guidance, manufacturers should not use benzene in the manufacture of drugs," which implies that the use benzene at any level should be avoided. (2-ER-091). *See Clinger v. Edgewell Personal Care Brands, LLC*, 2023 WL 2477499, at *11 (D. Conn. March 13, 2023) (denying motion to dismiss for lack of standing, holding that "I do not read the new FDA guidance so definitively," disagreeing with *Bowen v. Energizer Holdings, Inc*., 2023 WL 1786731 (C.D. Cal. Jan. 5, 2023)). Still, the lower court rejected Ms. Bowen's allegations of fact in favor of Defendants' interpretation. Because the district court applied the wrong standard for determining subject-matter jurisdiction, reversal is warranted. *See Dreier*, 106 F.3d at 847.

## 2. The district court erred in dismissing Plaintiff's increased risk of harm claim and economic loss claim for lack of Article III standing.

After erroneously adopting Defendants' factual averments and construing them in the light most favorable to Defendants (instead of Plaintiff), the court next

*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

considered whether Plaintiff had adequately alleged a "concrete injury" under either an increased risk of harm theory or an economic loss theory "in light of the FDA's guidance." (1-ER-010). Unsurprisingly, the court dismissed these claims.

Specifically, the court held that Plaintiff had failed to plausibly allege that 0.29 ppm of benzene in her purchased and tested sunscreen (i.e. Ultra Sport 50) "creates a credible or substantial risk of harm." (1-ER-011-012). The court found Plaintiff's risk of harm claims were "too speculative" in light of the FDA's concentration limit of 2 ppm of benzene, (1-ER-012), despite simultaneously acknowledging that Plaintiff's risk of harm claim was supported "with citations to published literature and statements from the scientific community." (1-ER-010-011).

The lower court likewise dismissed Plaintiff's economic loss claim, finding that her "alleged loss in value also rests on a hypothetical risk" of harm. (1-ER-015). The court found that "Defendants have shown that, as alleged, the products purchased by Plaintiff meet FDA guidelines with respect to acceptable levels of benzene in sunscreen. Therefore, Plaintiff's alleged harm is based only on her speculation that the presence of 0.29 ppm of benzene renders her sunscreen unsafe, which does not establish economic injury for standing." (1-ER-017).

Again, the court's holding with respect to lack of economic harm completely ignores Plaintiff's factual averments that benzene exposure is harmful even at low

*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

levels, (3-ER-368-369), and her allegation that "she spent money to purchase sunscreen products she would not otherwise have purchased, or paid less for, absent Defendants' misconduct[.]" (3-ER-361). Had the district court accepted these allegations as true, *see Dreier*, 106 F.3d at 847, Plaintiff's economic loss claim would satisfy the injury-in-fact requirement, particularly with respect to the Ultra Sport 50 product that she purchased and had laboratory tested to find that it contained 0.29 ppm of benzene. *See Maya,* 658 F.3d at 1069 (a "quintessential injury-in-fact" occurs when the "plaintiffs spent money that, absent defendants' actions, they would not have spent"). *See also Kwikset,* 51 Cal.4th at 329 ("A consumer who relies on a product label and challenges a misrepresentation contained therein can satisfy the standing requirement of [the UCL] by alleging ... that he or she would not have bought the product but for the misrepresentation"); *Hinojos*, 718 F.3d at 1104 ("The *Kwikset* Court explained precisely what a plaintiff must allege when he wishes to satisfy the economic injury requirement in a case involving false advertising: "[a] consumer who relies on a product label and challenges a misrepresentation contained therein can satisfy the standing requirement of section 17204 by alleging ... that he or she would not have bought the product but for the misrepresentation").

Indeed, other district courts considering the same or similar claims, including claims involving Banana Boat sunscreen products, have held that

*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

"sufficient allegations of an injury in fact" exist where a plaintiff alleges "she would not have purchased the products, or would not have purchased them for the listed price, had she known they contained a human carcinogen." *Barnes v. Unilever United States, Inc*., 2022 WL 2915629, at *1 n.1 (N.D. Ill. July 24, 2022) (plaintiff's economic loss claim that she would not have purchased a product had she known of the risk of benzene contamination "holds water" even if "benzene contamination applied only to some limited lots of [the defendant's] product" because the plaintiff's "theory of injury" is "that she would not have purchased the product had she known of the risk it contained benzene"); *Clinger*, 2023 WL 2477499, at *3-5 (finding plaintiffs who purchased the same sunscreen products shown by Valisure or the plaintiff' independent testing to contain benzene had standing, disagreeing with *Bowen v. Energizer Holdings, Inc*., 2023 WL 1786731 (C.D. Cal. Jan. 5, 2023)); *Gagetta v. Walmart, Inc*., __ F.Supp.3d __, 2022 WL 17812924, at *4 (N.D. Cal. Dec. 19, 2022) ("[T]he plaintiffs' allegations that the risk [of heavy metals] existed and that they would not have purchased the products had they known the risk are plausible. The plaintiffs successfully pleaded economic injury for standing").

Because the district court had already erroneously adopted the FDA's alleged 2 ppm benzene standard, however, it found *Kwikset* and *Hinojos* distinguishable: "*Hinojos* and *Kwikset* are distinguishable from the alleged harm

*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

here because the economic harms alleged in *Hinojos* and *Kwikset* were not based on hypothetical or speculative risks." (1-ER-013). "Plaintiff's alleged economic harm is premised on the speculative notion that the presence of 0.29 ppm of benzene, or any potential presence of benzene, make the sunscreens unsafe." (1-ER-015). Consequently, the court determined that Ms. Bowen's harm was more analogous to the harm alleged in *Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009), wherein the Court noted *in dicta* that plaintiffs lacked standing related to the hypothetical risk of hearing loss. (1-ER-015).

But the lower's court's reliance on *Birdsong* is subject to the same fatal flaw—it is premised on an erroneous conclusion that the FDA's 2 ppm benzene standard applied and, thus, the products were safe. Had the district court viewed the disputed facts in the light most favorable to Plaintiff, her alleged risk of harm would no longer be considered hypothetical.

For similar reasons, the lower court's reliance on *Herrington v. Johnson & Johnson Consumer Companies, Inc.*, 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) and *Boysen v. Walgreens, Co.*, 2012 WL 2953069 (N.D. Cal. July 19, 2012) are distinguishable. In those cases, the courts held that plaintiffs lacked standing because they did not allege non-speculative injuries. Once again, had the lower court not applied the wrong standard and instead viewed the disputed facts in the

17

*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

light most favorable to Plaintiff, her allegations of increased risk of harm and economic loss sufficiently allege a concrete and particularized injury-in-fact.

*Birdsong*, *Herrington* and *Boysen* are also distinguishable on their underlying facts. Unlike here, the plaintiffs in those cases did not allege economic harm in reliance on false labeling and advertising under California's Unfair Competition Law or other regulations. Conversely, Ms. Bowen does. (3-ER-383-392). As a result, those cases do not support the lower court's ruling. *See Degelmann v. Advanced Medical Optics, Inc*., 659 F.3d 835, 840 n.1 (9th Cir. 2011), *vacated on other grounds*, 659 F.3d 835 (9th Cir. 2012) (holding plaintiffs had standing, distinguishing *Birdsong* on basis that the plaintiffs in *Birdsong* did not allege economic harm in reliance on false advertising whereas the plaintiffs in this case do make false labeling and advertising claims under the UCL); *Kosta v. Del Monte Corp*., 2013 WL 2147413, at *11 (N.D. Cal. May 15, 2013) (distinguishing *Herrington* and *Boysen* on same grounds); *Victor v. R.C. Bigelow, Inc*., 2014 WL 1028881, at *4 (N.D. Cal. Mar. 14, 2014) (same).

The district court also held that Ms. Bowen did not have standing with respect to the other two sunscreen products she purchased—Banana Boat Ultra Sport 100 and Ultra Sport 30—because she does not allege that these two products "actually or plausibly contained benzene." (1-ER-006). "Plaintiff does not allege that Valisure's discovery can be extrapolated across all of Defendants' products or

18

*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

to a specific batch which could have ended up in her purchased sunscreen." (1-ER-007). Additionally, said the court, "Defendants are able to point to an FDA guideline—the 2 ppm benzene limit—which suggests that Defendants' products are safe as alleged." (1-ER-007). The court thus concluded that "Plaintiff's alleged injury related to Ultra Sport 30 and Ultra Sport 100 remains based on too attenuated a possibility that the sunscreen Plaintiff purchased may have contained an unsafe amount of benzene." (1-ER-007-008). These findings were in error.

**First**, the district court's view of standing is "overly restrictive." *Clinger*, 2023 WL 2477499, at *5. In criticizing the district court's interpretation of the FDA guidance documents, the court in *Clinger* noted "it is plausible to conclude that, if one specific batch of the same sunscreen product contains benzene, then other batches of the very same product line are manufactured in the same manner and—notwithstanding the possibility of variability from batch to batch—are likely to contain benzene." *Id.* **Second**, it is not necessary that Plaintiff allege that the specific sunscreen products *she* purchased contained benzene to establish standing. She may rely on third-party testing to establish a credible inference of the risk of benzene contamination for the same type of product (e.g. Ultra Sport 100). *Id*. at 4. (holding that plaintiffs who purchased sunscreen products from the same product line shown by Valisure to contain detectable levels of benzene had established a plausible risk of harm for purposes of standing).

*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

Indeed, for products like sunscreen, which are designed to be discarded after use, it would be a "bizarre result" to allow sellers of adulterated products to "mix compliant and non-compliant products with impunity so long as there was no way for the buyer to trace the specific item she purchased back to the source." *Dana v. Hershey Co*., 180 F.Supp.3d 652, 662 n.8 (N.D. Cal. 2016), *aff'd*, 730 F. Appx. 460 (9th Cir. 2018). Accordingly, and consistent with Ninth Circuit precedent, "if a customer has paid a premium for an assurance that a product meets certain standards, and the assurance turns out to be meaningless, the premium that the customer has paid is an actual, personal, particularized injury that is cognizable under Article III. *Id*. (citing *Hinojos*, 718 F.3d at 1104).

In other words, it is enough under Ninth Circuit caselaw for a plaintiff to allege that there is a credible "risk" of exposure. The "Supreme Court has consistently recognized that *threatened* rather than actual injury can satisfy Article III standing requirements." *Harris v. Board of Supervisors, Los Angeles County*, 366 F.3d 754, 761 (9th Cir. 2004) (emphasis added). And this circuit has confirmed that "evidence of a credible *threat* to the plaintiff's physical well-being" is sufficient to satisfy the injury requirement. *Hall v. Norton,* 266 F.3d 969, 976 (9th Cir. 2001) (emphasis added).

Reading the allegations in the light most favorable to Plaintiff, the testing by Valisure, which showed that Ultra Sport 100—the same type of product purchased

*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

by plaintiff—was contaminated with >0.1 ppm benzene, is sufficient to create a credible threat of harm to Ms. Bowen's well-being. *Clinger*, 2023 WL 2477499, at *5. *See also Gagetta*, 2022 WL 17812924 at *4 ("[T]he plaintiffs' allegations that the risk [of heave metals] existed and that they would not have purchased the products had they known the risk are plausible. The plaintiffs successfully pleaded economic injury for standing"); *Hamman v. Cava Group., Inc*., 2023 WL 3450654, at *5 (S.D. Cal. Feb. 8, 2023) (finding plaintiffs had successfully pleaded standing for economic injury where they relied on a "Consumer Reports article, similar studies and reports, and their own tests" to allege the products "are likely to contain PFAS and that PFAS are dangerous even in small quantities"). This is especially true at the outset of the litigation, where discovery has not taken place and the results of Defendants' own testing of its sunscreen products have not been disclosed.

Even in the absence of *any* testing, Ms. Bowen would still have Article III standing to assert her economic loss claims for every sunscreen product (purchased or not) based on her additional and distinct allegations that the Defendants' sunscreens contain false and deceptive labeling in violation of California's consumer protection laws. This theory of injury does not depend on allegations that she would not have purchased the sunscreens or would have paid less for them had

*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

she known they contained or risked containing benzene. Rather, it relies on

Defendants' alleged failure to provide all relevant information to purchasers.

Specifically, Ms. Bowen alleges that *all* of Defendants' Banana Boat

sunscreen products, including Ultra Sport 100 and Ultra Sport 30, are marketed in

substantially the same way—as "sunscreen"—and that *all* such products contain

the same defective labeling in that they do not disclose the presence of benzene as

required under California law. (3-ER-371; 3-ER-379).  *See LeGrand v. Abbott*

*Lab'ys*, __ F.Supp.3d __, 2023 WL 1819159, at *5 (N.D. Cal. Feb. 23, 2023)

(finding plaintiff had standing to assert claims for products she did not purchase

because the products and alleged misrepresentations are "substantially similar")

(quoting *Miller v. Ghiradelli Chocolate Co*., 912 F. Supp. 2d 861, 868 (N. D. Cal.

2012)). Relatedly, she alleges she "lost money" by purchasing sunscreen products

she would not have purchased but for Defendants' misrepresentations. (3-ER-361;

3-ER-386-387; 3-ER-392). Such allegations are sufficient to establish standing

under California's consumer protection laws.

Under California Supreme Court precedent, "[a] consumer who relies on a

product label and challenges a misrepresentation contained therein can satisfy the

standing requirement of [the UCL] by alleging ... that he or she would not have

bought the product but for the misrepresentation." *Kwikset,* 51 Cal.4th at 329.

Similarly, in *Moreno*, the Ninth Circuit recently reversed a district court's order

22

*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

granting dismissal pursuant to Rule 12(b)(1) for lack of Article III standing and

subject matter jurisdiction, confirming the Court's the long-standing principle that

plaintiffs have Article III standing under California law when they allege they

"spent money that, absent defendants' actions, they would not have spent" but for

defendants' misrepresentations. *Moreno v. Vi-Jon, LLC*, 2022 WL 17668457 (9th

Cir. Dec. 14, 2022) (citing *Hinojos,* 718 F.3d at 1104 n.3; *Maya*, 658 F.3d at

1069). Because Plaintiff has alleged everything *Kwikset* requires to satisfy

economic injury under California's UCL, FAL, and CLRA, she has satisfied the

standing requirement to pursue her economic loss claims related to the Ultra Sport

100 and Ultra Sport 30 products she purchased as well.

   For reasons already discussed, the lower court's additional conclusion that

there can be no injury because there is no safety risk posed by less than 2 ppm of

benzene is erroneous because it depends on a premature fact-based conclusion of

contested issues that the court failed to resolve in Plaintiff's favor. Hence, the

court's finding with respect lack to Plaintiff's lack of standing to pursue economic

loss claims related to Ultra Sport 100 and Ultra Sport 30 cannot stand.

### 3. The district court erred in relying on non-binding and contradictory FDA guidance.

   The district court erred in relying on non-binding and conflicting FDA

guidance to determine subject matter jurisdiction. In support of its finding that

Plaintiff lacked Article III standing, the court interpreted the FDA alert and FAQ to

*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

decide contested issues of material fact, including: (1) whether manufacturers may use benzene in the manufacture of sunscreens; and (2) what level of benzene exposure constitutes an increased risk of harm. The problem with the lower court's reasoning is that interpretative statements of a federal agency's website—such as FDA alerts and FAQs—are not "final agency" actions. *BBK Tobacco & Foods, LLP v. U.S. Food & Drug Admin.*, 672 F. Supp. 2d 969, 975 (D. Ariz. 2009) (holding that FDA Q&A guidance documents are not "final agency" actions and thus "do not provide any legal basis from which the FDA can institute civil or criminal legal proceedings"). They are not statutes or regulations. They do not have the force of law. As such, even assuming, *arguendo*, these agency statements could be interpreted as "implying" or "suggesting" that sunscreen manufacturers may safely use up to 2 ppm benzene, which Plaintiff disputed,[2] these statements are not entitled to deference by the court.

As the Ninth Circuit has noted, in reference to the "Frequently Asked Questions" section of the website for the United States Citizenship and Immigration Services, "it cannot be disputed that the FAQ section of a federal

---

[2] The ICH Q3C guidelines provide that "Solvents in Class 1 should not be employed in the manufacture of drug substances, excipients, or drug products . . ." and the FDA alert provides that "[c]onsistent with the recommendations of the ICH Q3C guidance, manufacturers should not use benzene in the manufacture of drugs"—both of which imply that the use of benzene at any level should be avoided. (3-ER-369; 3-ER-373; 2-ER-091; 2-ER-111).

*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

website is not a source of 'federal law,' *nor would an interpretation announced there be subject to deference by a court*." *Arizona Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1073 (9th Cir. 2014) (emphasis added) (Judge Christen, concurring). *See also Western Radio Services Co. Inc. v. Espy*, 79 F.3d 896 (9th Cir. 1996) (holding that the Forest Service Handbook and Manual merely established guidelines and were not binding on the agency and did not have the independent force and effect of law); *Christensen v. Harris Cty.*, 529 U.S. 576, 587 (2000) ("Interpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant *Chevron*-style deference"); *Tennessee Hosp. Assoc. v. Price*, 2017 WL 2703540, at * 7 (M.D. Tenn. June 21, 2017) ("Responses to [agency] FAQs do not carry the force of law and do not qualify for Chevron deference").

At most, such statements represent the FDA's "current thinking" on a topic. *Franz v. Beiersdorf, Inc*., 2019 WL 2192635, at *2 (S.D. Cal. May 21, 2019) (holding that "FDA guidance, as helpful as it may be, doesn't necessarily determine what is a what isn't a drug under the FDCA."); *Biovail Laboratories Inc. v Anchen Pharmaceuticals Inc*., 2006 WL 8071250, at *6 n. 2 (C.D. Cal. Aug. 1, 2006) (noting that FDA "[g]uidance documents represent the Agency's current thinking on a particular topic. They do not create or confer any rights for or on any

25

*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

person and do not operate to bind FDA or the public") The FDA is free to abandon its "current thinking" on the question of the allowable benzene limit in drug products at any stage of the administrative process before issuing its final regulations, if any. In fact, the non-definitive nature of such guidance is evident in the very FDA alert relied upon by the district court. In its alert, the FDA references the "stepwise" approach it is taking to the issue of benzene contamination in drugs, noting that "further updates" may be forthcoming:

> As FDA evaluates the root cause of benzene contamination in certain drugs, the agency is taking a stepwise approach to address the potential for benzene contamination in marketed drug products by first identifying products that should be immediately recalled[.] Concurrently, the agency will review any Field Alert Reports from drug manufacturers that identify the presence of benzene, in addition to other available information. This information will help inform further updates to FDA's approach to limiting benzene levels in drug products, as appropriate.

In sum, the district court inappropriately relied on non-binding and non-definitive guidance contained in the alert and FAQ sections of the FDA's website to resolve the merits of Plaintiff's standing claims, and did so without viewing the disputed facts in the light most favorable to Plaintiff. This was error.

**4. The district court erred in not permitting Plaintiff to pursue discovery as to jurisdictional facts that go to the merits of her claims.**

The district court likewise erred by denying Ms. Bowen the opportunity to conduct discovery where the issue of jurisdiction was intertwined with the merits

of her claims. Here, the basis of Defendants' jurisdictional attack is an allegation that the FDA's ICH Q3C guidelines do not apply because the "unavoidable" test applies only when benzene is "purposefully used" in the production. (2-ER-174). They further assert—*without any supporting evidence*—that benzene is *not* purposefully used in the production of their sunscreen products (2-ER-175), which is directly contradicted by Plaintiff's allegation that "Defendants knew or should have known that their Sunscreen Products contained benzene[.]" (3-ER-398).

A federal judge in Connecticut overseeing another pending Banana Boat benzene-contamination case recently commented on the irrational nature of such a defense, noting: "[T]he defendants' position would mean that the FDA has irrationally prohibited or strictly limited the *purposeful* use of benzene in drug manufacturing while greenlighting the presence of benzene if it is *accidentally* introduced into a product. And even assuming the defendants have correctly interpreted the guidance, they must still wish away a factual dispute as to whether benzene is a purposefully used ingredient." *Clinger*, 2023 WL 2477499, at *11.

More fundamentally, however, the issues of whether the FDA's alleged 2 ppm benzene standard is preclusive and/or what amount of benzene leads to harm are hotly contested issues of fact that go to the merits of Plaintiff's claims. As such, they are inappropriate to resolve on a motion to dismiss. *See Clinger,* 2023 WL 2477499, at *5 (denying motion to dismiss for lack of standing, finding "[w]hether

the FDA's [2 ppm benzene] standard is preclusive is a merits question, not a standing question"); *Henning v. Luxury Brand Partners, LLC*, 2023 WL 3555998, at *3 (N.D. Cal. May 11, 2023) (denying motion to dismiss, stating "the actual amount of benzene that leads to harm is a factual matter that is inappropriate for resolution at this stage"); *Gagetta*, 2022 WL 17812924, at *5 (holding that "whether these levels of metals are safe is a hotly contested issue of fact" that is "inappropriate to resolve on a motion to dismiss because they go to the merits of the plaintiffs' claims").

At the outset of the hearing below on Defendants' motion to dismiss, the district judge commented that the motion is "just becoming a little summary judgment-ish here." (4-ER-834). Counsel for Plaintiff agreed, lamenting that it would be "premature to dismiss a plaintiff's complaint at the … pleading stage without allowing [P]laintiff [the opportunity] to conduct discovery into facts that could support her claims." (4-ER-840). Counsel for Plaintiff continued:

> … zero discovery has taken place. We don't know anything about the [D]efendants' own testing [of its sunscreens]. Even though they have issued two recalls [for benzene contamination in their sunscreens to date], we just have to rely on what the public record provides, and our own testing that we got out of the [P]laintiff's product. . . . In order to allow benzene to be used in a drug, . . . its use has to be unavoidable and for a therapeutic benefit. (4-ER-836).

\*\*\*

*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

> We don't have any evidence that the FDA has ever allowed the [D]efendants to use benzene because it's unavoidable. We don't know anything about that because discovery hasn't been allowed to proceed. (4-ER-838).

Simply stated, Ms. Bowen should have been allowed to pursue discovery as to jurisdictional facts asserted by Defendants prior to dismissal. Indeed, such discovery could yield information relevant to crucial matters at issue, including matters about which the lower court's order was critical. This includes discovery into: what sunscreen products have been tested by Defendants for the presence of benzene; the level of benzene detected in those products; the lot numbers and/or batches affected by the contamination; and whether Defendants purposefully used benzene in the production process despite its known carcinogenic properties. Failure to allow discovery into such important jurisdictional facts prior to dismissal of the SAC constitutes reversible error. *See Vera v. Bureau of Indian Affairs*, 738 Fed. Appx. 432, 432 (9th Cir. 2018) (reversing district court's Rule 12(b)(1) dismissal for not permitting plaintiff to pursue discovery as to jurisdictional facts that were not within his knowledge or control, in this case the extent of government control over a portion of a road where plaintiff's accident occurred) (citing, *inter alia*, *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (holding that "where the jurisdictional issue and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional determination should await a

29

*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

determination of the relevant facts on either a motion going to the merits or at trial").

## CONCLUSION

For any of the foregoing reasons, Plaintiff respectfully requests that the order and judgment of the district court be reversed and that this lawsuit be remanded for further proceedings. Plaintiff further requests all other relief to which she is entitled.

Dated: June 13, 2023

Respectfully submitted,

 /s/R. Jason Richards
R. Jason Richards
Aylstock, Witkin, Kreis &
Overholtz, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone (850) 202-1010
Facsimile (850) 916-7449
Email: jrichards@awkolaw.com

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** <u>23-5516</u>

I am the attorney or self-represented party.

**This brief contains <u>7,005</u> words,** including _____ words manually counted in any visual images, and excluding the items exempted by FRAP 32(f).

The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** <u>/s/R. Jason Richards</u>    **Date** <u>06/13/2013</u>
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**    *Rev. 12/01/22*

31

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 15. Certificate of Service for Electronic Filing

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form15instructions.pdf*

**9th Cir. Case Number(s)** 23-55116

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**
[X] I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are NOT Registered for Electronic Filing:**
[ ] I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

**Description of Document(s)** *(required for all documents)*:

Appellant's Opening Brief

**Signature** /s/R. Jason Richards   **Date** June 13, 2023
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 15**                              32                              *Rev. 12/01/18*