*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

**No. 23-55116**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

BETH BOWEN,

*Plaintiff-Appellant*,

v.

ENERGIZER HOLDINGS, INC., ET AL.

*Defendants-Appellees*.

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
No. 2:21-CV-04356-MWF-AGR**

**THE HONORABLE MICHAEL W. FITZGERALD**

---

**APPELLANT'S REPLY BRIEF**

---

R. Jason Richards
Aylstock, Witkin, Kreis &
Overholtz, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone (850) 202-1010
Facsimile (850) 916-7449
Email: jrichards@awkolaw.com

Kiley Lynn Grombacher
Bradley Grombacher, LLP
31365 Oak Crest Drive, Suite 240
Westlake Village, CA 91361
Telephone: (805) 270-7100
Email:
kgrombacher@bradleygrombacher.com

*Counsel for Plaintiff-Appellant, Beth Bowen*

*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................i

TABLE OF AUTHORITIES ........................................................................ ii

INTRODUCTION ........................................................................................1

ARGUMENT ................................................................................................2

    I.      THE DISTRICT COURTS' DISMISSAL REGARDING STANDING SHOULD BE REVERSED. ......................................................................2

        A.  Plaintiff's risk of harm is not subjective ............................................2

        B.  Defendants' citations to authority are distinguishable. .................3

        C.  The FDA has not "determined" that manufacturers may use up to 2 ppm in drug products without satisfying the safe harbor provision first................................................................................................6

        D.  The FDA guidance documents support Plaintiff's allegations...................9

        E.  The lower court erred in deferring to non-definitive FDA guidance in favor of Defendants ......................................................................11

        F.  Defendants authority is unpersuasive..............................................13

        G.  Plaintiff should have been given the opportunity to conduct discovery prior to dismissal. ......................................................................14

CONCLUSION ..........................................................................................23

CERTIFICATE OF COMPLIANCE........................................................24

CERTIFICATE OF SERVICE ..................................................................25

*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Jamba Juice Co.*,
   888 F. Supp. 2d 1000 (N.D. Cal. 2012) ........................................................ 24, 23

*Arizona Dream Act Coalition v. Brewer*,
   757 F.3d 1053 (9th Cir. 2014) ................................................................. 9

*Armstrong v. Davis*,
   275 F.3d 849 (9th Cir. 2001) .............................................................. 22, 23

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (1995) ......................................................................... 11

*Blackburn v. Champions Petfoods USA, Inc.*,
   2021 WL 9682169 (S.D. Iowa Aug. 12, 2021) ................................................. 16

*Bodle v. Johnson & Johnson Consumer Inc.*,
   2022 WL 18495043 (N.D. Cal. Feb. 24, 2022) ........................................... 17, 18

*Bowen v. Energizer Holdings, Inc.*,
   2023 WL 1786731 (C.D. Cal. Jan. 5, 2023) ...................................................... 8

*Boysen v. Walgreen Co.*,
   2012 WL 2953069 (N.D. Cal. July 19, 2012) .................................................... 5

*Cimoli v. Alacer Corp.*,
   546 F. Supp. 3d 897 (N.D. Cal. 2001) .......................................................... 22

*Clinger v. Edgewell Personal Care Brands, LLC*,
   2023 WL 2477499 (D. Conn. March 13, 2023)................................... 8, 14, 15, 20

*Coffelt v. Kroger Co.*,
   2018 WL 6004543 (C.D. Cal. Aug. 17, 2018)............................................. 17, 18

*Dana v. Hershey Co.*,
   180 F.Supp.3d 652 (N.D. Ca. 2016) .......................................................... 16

*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

*Danielson v. Chevron Corp.*,
 1993 WL 515872 (N.D. Cal. Dec. 6, 1993) ......................................................... 15

*Dreier v. U.S.*,
 106 F.3d 844 (9th Cir. 1996) ................................................................. 1, 3, 7, 13

*Gibson v. United States*,
 781 F.2d 1334 (9th Cir. 1986) ................................................................... 15

*Herrington v. Johnson & Johnson Consumer Cos., Inc.*,
 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) ........................................................ 6

*Hinojos v. Kol's Corp.*,
 718 F.3d 1098 (9th Cir. 2013) ..................................................... 1, 5, 16, 17, 18

*Iglesias v. Arizona Beverages USA, LLC*,
 2023 WL 4053803 (N.D. Cal. June 16, 2023) .................................................... 21

*In re Methyl Butyl Ether ("MTBE") Prods. Liab. Litig.*,
 457 F. Supp. 2d 298 (S.D. N.Y. 2006) ............................................................... 3

*In re Zantac (Ranitidine) Prods. Liab. Litig.*,
 2022 WL 17480906 (S.D. Fla. Dec. 6, 2022) ...................................................... 3

*John v. Whole Foods Market Group, Inc.*,
 858 F.3d 732 (2d Cir. 2017) ..................................................................... 20

*Johnson & Son, Inc.*,
 2021 WL 1788397 (N.D. Cal. May 5, 2021) ...................................................... 22

*Koronthaly v. L'Oreal USA, Inc.*,
 374 Fed. App'x 257 (3d Cir. 2010) ................................................................... 4

*Kwikset Corp. v. Superior Court*,
 51 Cal.4th 310 (2011) ......................................................................... 1, 5

*LeGrand v. Abbott*,
 2023 WL 1819159 (N.D. Cal. Feb. 23, 2023) ................................................... 21

*Maya v. Centex Corp.*,
 658 F.3d 1060 (9th Cir. 2011) ................................................................. 1, 5

*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

*McCoy v. Nestle USA, Inc.*,
   173 F.Supp.3d 954 (N.D. Cal. 2016) ................................................... 16

*Miller v. Ghirardelli Chocolate Co.*,
   912 F. Supp. 2d 861 (N.D. Cal. 2012) ................................................. 22

*Moore v. Trader Joe's Co.*,
   4 F.4th 874 (9th Cir. 2021) ............................................................... 7, 8

*Moore v. Trader Joe's Co.*,
   2019 WL 2579219 (N.D. Cal. June 24, 2019) ....................................... 7

*Pels v. Keurig Dr. Pepper, Inc.*,
   2019 WL 5813422 (N.D. Cal. Nov. 7, 2019) ................................... 18, 19

*Rice-Sherman v. Big Heart Pet Brands, Inc.*,
   2020 WL 1245130 (N.D. Cal. Mar. 20, 2020) ....................................... 16

*Soo Park v. Thompson*,
   851 F.3d 910 (9th Cir. 2017) ................................................................ 16

*U.S. v. Barnard*,
   889 F.2d 1096 (9th Cir. 1989) .............................................................. 10

*United ex rel. Lujan v. Hughes Aircraft Co.*,
   243 F.3d 1181 (9th Cir. 2001) .............................................................. 13

*Wallace v. ConAgra Foods*, Inc.,
   747 F.3d 1025 (8th Cir. 2014) .............................................. 16, 17, 19

**Statutes**

21 U.S.C. § 343(i) ...................................................................................... 7

**Regulations**

21 C.F.R. 101.3 ......................................................................................... 7

iv

*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

## INTRODUCTION

The Appellees' ("Defendants") Answer Brief is notable for what it does not say. First, nowhere in the Answer Brief do Defendants respond to the first appellate issue presented by Plaintiff in her Opening Brief: whether the district court erred in failing to resolve all disputed facts in favor of the Plaintiff when it was confronted with a Rule 12(b)(1) subject matter jurisdiction challenge and considered items outside the pleadings. Nor do Defendants address the binding Ninth Circuit precedent cited by Plaintiff that holds a district court must resolve all material facts in favor of the non-moving party when considering items outside the pleadings. *See Dreier v. U.S.*, 106 F.3d 844, 847 (9th Cir. 1996). Defendants' silence on the issue speaks volumes.

Second, Defendants do not address any of the standing cases cited by Plaintiff in her Opening Brief, all of which hold that a monetary harm is a sufficiently concrete injury to satisfy Article III standing. *See Kwikset Corp. v. Superior Court,* 51 Cal.4th 310, 326, 329 (2011); *Hinojos v. Kol's Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013); *Maya v. Centex Corp.,* 658 F.3d 1060, 1069 (9th Cir. 2011). Plaintiff's SAC clearly alleges a monetary harm in the money she paid for the three allegedly contaminated sunscreen products. (3-ER-360).

Finally, Defendants falsely seek to construe the district court's consideration of FDA guidance documents as "judicially noticed" facts, claiming that the court

1

*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

"properly took judicial notice" of the FDA's alert and FAQ. Answer Br. at 27. This claim finds no support in the record. Neither party requested that the court take judicial notice of the FDA guidance documents, and there is no indication in the lower court's order of dismissal that the judge *sua sponte* took judicial notice the such documents.

## ARGUMENT

I.    THE DISTRICT COURTS' DISMISSAL REGARDING STANDING SHOULD BE REVERSED.

A. Plaintiff's risk of harm is not subjective.

Defendants assert that Plaintiff seeks to improperly base her standing on her "subjective belief that trace levels of benzene render a product unsafe."[1] Reply Br. at 13.  But the allegations of the risk of harm are not the Plaintiff's subjective belief alone. As acknowledged by the district court, the alleged risk of harm from low or trace level exposure to benzene is supported "with citations to published literature and statements from the scientific community," (1-ER-010-011). Plaintiff's risk of harm claim is even supported by Defendants' themselves. As alleged in the SAC, Defendants recalled several batches of Banana Boat aerosol

---

[1] Contrary to Defendants' claims, there is nothing "usual or absurd" about Plaintiff not wanting to purchase benzene-contaminated sunscreen, even at low levels of contamination. Reply Br. at 1. Such a decision is no different than Defendants' recent decision to recall numerous Banana Boat sunscreen products "out of an abundance of caution" due to "trace levels of benzene." (3-ER-372-373).

*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

sunscreen in 2021 and 2022 because "some samples" contained "trace levels of benzene." (3-ER-372-373). Thus, the risk of "trace level" exposure to benzene in "some samples," according to Defendants themselves, constitutes a sufficient "risk of harm" to warrant a nationwide recall. Accepting Plaintiff's allegations as true, *see Dreier*, 106 F.3d at 847, Plaintiff has plausibly inferred a credible threat beyond her subjective apprehensions. *See In re Methyl Butyl Ether ("MTBE") Prods. Liab. Litig.*, 457 F. Supp. 2d 298, 307 (S.D. N.Y. 2006) (plaintiff's allegations that exposure to MTBE, a known animal carcinogen and a probable human carcinogen, are sufficient to establish a credible threat of harm for purposes of standing). It was thus error for the district court to conclude that Plaintiff's level of exposure to benzene did not pose an objectively serious risk of harm.

      **B. Defendants' citations to authority are distinguishable.**

      Defendants cite several cases in support of lack of standing, but those cases are distinguishable or inapplicable. The *Zantac* decision is inapplicable because it is a Florida case that concerned the level of proof required to satisfy the *Daubert* standard, not the sufficiency of allegations in a complaint. *In re Zantac (Ranitidine) Prods. Liab. Litig.*, -- F.Supp.3d --, 2022 WL 17480906 (S.D. Fla. Dec. 6, 2022).

3

*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

*Koronthaly* is an unpublished Third Circuit opinion that is also not binding on this court. *See Koronthaly v. L'Oreal USA, Inc*., 374 Fed. App'x 257 (3d Cir. 2010). *Koronthaly* involved a plaintiff who sued a cosmetics manufacturer after discovering that the lipstick she purchased contained trace amounts of lead. The court dismissed plaintiffs' claims due to the absence of a concrete injury, finding that the plaintiff had failed to allege an injury in fact because the FDA "does not regulate the presence of lead in lipstick" and the agency had concluded that the amount of lead in the lipstick was safe and did not require warnings. *Id*. at 258. By contrast, here, there are no FDA regulations concluding that using benzene in sunscreen is safe, and relevant FDA guidance provides that that benzene "should not be employed in the manufacture of drug . . . products because of [its] unacceptable toxicity." (3-ER-488). Nor is there any FDA regulation (or guidance) concluding that sunscreen manufacturers do not have to provide warnings regarding benzene, and Plaintiff has alleged that the lack of such a warning renders the products misbranded under California law. Finally, unlike in *Koronthaly*, here the Plaintiff has alleged that the sunscreen she purchased was not safe for its intended use (3-ER-376; 3-ER-395-396), and that it was less valuable than sunscreen that was not contaminated with benzene. (3-ER-388-389; 3-ER-393).

*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

The unpublished *Boysen* decision is also distinguishable. *See Boysen v. Walgreen Co.*, 2012 WL 2953069 (N.D. Cal. July 19, 2012). In that case, the plaintiff claimed economic injury based on purchasing "fruit juice" containing levels of arsenic higher than those levels permitted by the FDA in "bottled water." *Id.* at *1-2. The court dismissed for lack of standing in part because the arsenic levels did not exceed the levels permitted by the FDA issued guidance for fruit juice, and because the FDA issued reports stating that those levels of arsenic in fruit juice were safe. *Id.* at *5-6. Notably, in *Boysen*, the plaintiff did "not allege that the products [being challenged] violate FDA guidelines for fruit juices," "that consumption of the products may cause physical harm," or "that the juices at issue were unfit for their intended use" such that plaintiff "'lost money or property' sufficient to establish injury." *Id.* at *6-7. Unlike *Boysen*, here, Plaintiff *does* allege that: (1) Defendants' sunscreen products violate FDA ICH Q3C guidance related to the use of benzene in drug products; (2) her exposure to low levels of benzene presents a credible risk of harm; (3) the sunscreen products are defective and not reasonably safe for their intended use; and (4) she "lost money" by purchasing a product she would not otherwise have purchased but for Defendants' unlawful labeling. This is sufficient to establish an economic injury-in-fact under California law. *See Kwikset,* 51 Cal.4th at 326; *Hinojos*, 718 F.3d at 1104; *Maya,* 658 F.3d at 1069.

*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

The unpublished decision in *Harrington* is unpersuasive for similar reasons. *See Herrington v. Johnson & Johnson Consumer Cos., Inc.*, 2010 WL 3448531 (N.D. Cal. Sept. 1, 2010).  In *Herrington*, the court found that allegations of the presence of carcinogenic chemicals in children's bath products, without any claim that the products were unsafe or unfit for their intended use, did not create a cognizable injury for Article III. *Id.* at *3-4.  Conversely, here, Plaintiff does allege that the presence of benzene in the sunscreen renders the products unsafe and unfit for their intended purpose, and that the presence of benzene violates FDA guidance.

> ### C. The FDA has not "determined" that manufacturers may use up to 2 ppm in drug products without satisfying the safe harbor provision first.

Defendants repeatedly claim the FDA "has determined" that benzene levels of 2 ppm are acceptable in drug products.  Answer Br. at 1, 9, 13, 14, 21, 22, 27, 30, 35, 36, 37, 44. That may be Defendants' legal theory, but a false proposition repeated ad nauseam does not make it a true proposition. As noted in Plaintiff's Opening Brief, whether manufacturers may use up to 2 ppm benzene in sunscreen products is a contested issue of material fact. Opening Br. at 23. Indeed, Plaintiff's SAC alleges that the FDA's 2009 ICH Q3C guidance only permits the use of up to 2 ppm benzene if a manufacturer can show that its "use is unavoidable in order to produce a drug with a significant therapeutic advance," and there is no evidence

6

*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

that either of these safe harbor conditions have been met. Opening Br. at 7. Accordingly, when Defendants' claims are evaluated against the contradictory allegations in Plaintiffs' SAC—allegations that should have been (but were not) construed in Plaintiff's favor—they simply reinforce that there is a contested issue of material fact. In maintaining that FDA guidance "clearly" provides for a 2 ppm benzene standard, Defendants essentially asked the lower court to flip the summary judgment standard on its head and construe the evidence in a light most favorable to the moving party as opposed to the non-moving party. (4-ER-842) Worse, the lower court's willingness to endorse such an upending of the summary judgment standard constitutes error. *See Dreier*, 106 F.3d at 847.

*Moore v. Trader Joe's Co*., 4 F.4th 874 (9th Cir. 2021) is distinguishable. In *Moore*, the Ninth Circuit upheld the district court's interpretation of the "FDCA and it implementing regulations [which] set the standards for the proper labeling of honey and honey products." *Id*. at 881 (internal quotation omitted). Notably, the plaintiff there did not plausibly allege that Trader Joe's honey was "adulterated." *Moore v. Trader Joe's Co*., 2019 WL 2579219 at *5-6 (N.D. Cal. June 24, 2019). The district court was guided in its interpretation of these regulations by the FDA's Honey Guidelines, which specifically addressed the "proper labeling" of honey. *Id*. at *3. The district court held that the product's labeling complied with FDCA labeling requirements for honey (21 U.S.C. § 343(i); 21 C.F.R. 101.3) as supported

*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

by the implementing Honey Guidance. *Id*. at *5. Upholding the district court's

decision, the Ninth Circuit found that "a consumer of any level of sophistication

could not reasonably interpret Trader's Joe's label as Plaintiff's assert." *Moore*, 4

F. 4th at 884.

    Unlike in *Trader Joe's*, here the Plaintiff does allege that the sunscreen

products are "adulterated with benzene." (3-ER-359; 3-ER-383-384).  Moreover,

there are no concomitant FDA regulations or implementing guidance which set the

standard for the "proper labeling" of benzene in sunscreen products.  Instead, there

are *three* non-binding FDA guidance documents, the two most recent of which

(FDA alert and FAQ) do not purport to displace prior guidance (ICH Q3C) or

definitively show that manufacturers are authorized to use up to 2 ppm benzene in

the manufacture of sunscreen products. Other courts agree. *See Clinger v.*

*Edgewell Personal Care Brands, LLC*, 2023 WL 2477499, at *11 (D. Conn. March

13, 2023) (denying motion to dismiss for lack of standing, holding that "I do not

read the *new* FDA guidance so definitively," disagreeing with *Bowen v. Energizer*

*Holdings, Inc*., 2023 WL 1786731 (C.D. Cal. Jan. 5, 2023) (emphasis added).

    There is little doubt from reading the district court's order of dismissal that

the court improperly "deferred" to the later issued FDA guidance in contravention

of Plaintiff's allegations. (1-ER-010) (district court's order stating "[t]he *FDA's*

8

*Bowen v. Energizer Holdings, Inc., et al.* – No. 23-55116

*alert and FAQ make it clear* that the FDA's 2 ppm benzene limit applies to Defendants") (emphasis added). At the pleading stage, where all reasonable interpretations of the FDA guidance documents are to be construed in Plaintiff's favor, the district court erred in deferring to the later issued FDA alert and FAQ over the earlier issued ICH Q3C guidance which, as alleged in the SAC, prohibits the use of benzene in drug product absent meeting the safe harbor exceptions. *Arizona Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1073 (9th Cir. 2014) ("it cannot be disputed that the FAQ section of a federal website is not a source of 'federal law,' nor would an interpretation announced there be subject to deference by a court.").

D. The FDA guidance documents support Plaintiff's allegations.

Defendants contend that the FDA's 2009 ICH Q3C guidance does not support Plaintiff's claim that benzene use is generally prohibited in drug products absent satisfying the safe harbor exceptions. Specifically, Defendants assert that Plaintiff's SAC fails to allege that Defendants "employed" benzene in the manufacturing process, as that term has been defined in the *Mirriam-Webster* dictionary. Answer Br. at 18-19. The FDA's 2009 ICH Q3C guidance provides:

> Solvents in Class 1 [e.g. benzene] should not be employed in the manufacture of drug substances, excipients, or drug products because of their unacceptable toxicity and their deleterious environmental effect. However, if their use is unavoidable in order to produce a drug with a significant

9

*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

> therapeutic advance, then their levels should be restricted
> [to 2 ppm], unless otherwise justified.

(1-ER-008; 3-ER-369).

Notably, Defendants did not raise this specific issue—the use or nonuse of the word "employed" in the SAC—in the district court, so this Court should decline to address it for the first time on appeal.[2] *U.S. v. Barnard*, 889 F.2d 1096 (9th Cir. 1989). But this argument is altogether dubious in any event insofar as the FDA's general prohibition on the use of benzene in drug products is not dependent on semantics or magic words. Indeed, while the FDA's ICH Q3C guidance states that benzene should not be *employed* in the manufacture of drugs, the FDA's later issued "alert" similarly provides that "[c]onsistent with the recommendations of the ICH Q3C guidance, manufacturers should not *use* benzene in the manufacture of drugs." Opening Br. at 13 (emphasis added). Thus, wordsmithing aside, the FDA has repeatedly issued guidance instructing that manufacturers should not "employ" or "use" benzene in the manufacture of drug products because of its "unacceptable toxicity." Opening Br. at 13.

---

[2] As noted in the district court's order, Defendants' argument regarding the FDA's ICG Q3C guidance focused on intent, not the term "employed": "Defendants argue that the ICH Q3C makes a distinction between Class I solvents purposefully used in production and residual solvents that may be used as part of the manufacturing process. Defendants contend the 'unavoidable' standard only applies to purposeful use of Class I solvents." (1-ER-009).

*Bowen v. Energizer Holdings, Inc., et al.* – No. 23-55116

Similarly, Defendants' additional contention that "Plaintiff has not alleged that Defendants purposefully use – or employ – benzene in the manufacture of the Products" is contradicted by the allegations in the SAC. *See* (3-ER-398) ("Defendants knew or should have known that their Sunscreen Products contained benzene"). But again, whether Defendants knew or should have known that their products contained benzene is irrelevant at this juncture. The lower court was not tasked with adjudicating whether Plaintiff will ultimately succeed on her claims, but rather whether the allegations, accepted as true for purposes of the motion to dismiss, state a legal claim. The question below was simply whether Plaintiff's SAC provides enough facts to "raise a reasonable expectation that discovery will reveal evidence of" the alleged wrongdoing. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (1995). Read in totality, it does. It is reasonable to assume that benzene did not magically appear in Banana Boat sunscreen products. And discovery—when it is allowed to begin—should reveal the origin of the contamination, the breadth of the contamination, the levels of contamination, and the extent of Defendants' knowledge regarding the contamination, including the risk of harm from exposure. Given that the issue of jurisdiction was intertwined with the merits of her claims, Plaintiff should have been afforded the right to conduct discovery regarding such critical issues prior to dismissal.

  E. The lower court erred in deferring to non-definitive FDA guidance in favor of Defendants.

11

*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

Defendants assert, on the one hand, that the district court was "correct to *follow* FDA guidance" but, on the other hand, that the court did not defer to such guidance. Reply Br. at 30. A synonym for "follow" is "to obey," meaning "to act according to the commands of."[3] As noted, A plain reading of the district court's opinion indicates that the court did in fact defer to the later issued FDA alert and FAQ over the previously issued ICH Q3C guidance, in contravention of Plaintiff's allegations.

Plaintiff has previously pointed out the facially inconsistent language between the FDA's 2009 ICH Q3C guidance, which prohibits the use of benzene in drug products unless the "safe harbor" provisions have been met, and the later issued FDA alert and FAQ, which, according to the district court and Defendants, authorize manufacturers to use of up to 2 ppm benzene in sunscreen. *See* Opening Br. at 13-14. *See also* (4-ER-842) (Defendants, referring to the FDA's alert and FAQ, stating: "The FDA has twice, since this lawsuit was filed, has said publicly, manufacturers [should] recall anything over 2 parts per million" but not anything less than 2 parts per million).  But the later issued FDA alert and FAQ do not purport to replace the earlier issued ICH Q3C guidance or do away with its requirement that use of benzene in sunscreens is prohibited absent compliance with

---

[3] *Follow, Merriam-Webster*, available at https://www.merriam-webster.com/thesaurus/follow (last accessed July 27, 2023.).

the "safe harbor" provisions. Quite the contrary. As previously noted, the later issued FDA alert provides that "[c]onsistent with the recommendations of the ICH Q3C guidance, manufacturers should not use benzene in the manufacture of drugs," which still implies that the use benzene at any level should be avoided. (2-ER-091).

At best, the text of the various FDA guidance documents at issue do not afford sufficient guidance to be able to choose with confidence between Plaintiff's interpretation and Defendants'. Indeed, perhaps both sides can offer plausible accounts of the guidances' benzene requirements. Under such circumstances, however, it remains true that Plaintiff is entitled to the benefit of any factual doubt. Here, the district court did not accept all of Plaintiff's factual allegations as true, nor did it draw all reasonable inferences in her favor. (1-ER-004) ("The court need not presume the truthfulness of the plaintiff's allegations under a factual attack"). Thus, it was error for the lower court to conclude that Plaintiff's interpretation of the various non-binding FDA guidance documents is implausible. *See Dreier*, 106 F.3d at 847. *See also United ex rel. Lujan v. Hughes Aircraft Co.*, 243 F.3d 1181, 1189 (9th Cir. 2001) (stating, in a case where the district court considered evidence outside the pleadings in ruling on a Rule 12(b)(1) motion, that "the reviewing court must accept as true the factual allegations of the complaint").

F.  Defendants authority is unpersuasive.

*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

Defendants attempt to distinguish *Henning, Clinger* and *Gagetta* is unpersuasive, because that distinction is premised on the disputed assumption that the FDA "has determined the amount of allowable benzene in drug products." Reply Br. at 35. As noted previously, the FDA has not "determined" this issue. There are no regulations governing the allowable amount of benzene, if any, in drug products. There is only FDA guidance—guidance that can reasonably be interpreted as Plaintiff alleged—that is, as prohibiting the use of benzene in drug products unless the "safe harbor" provisions have been satisfied. Opening Br. at 13.

> G. Plaintiff should have been given the opportunity to conduct discovery prior to dismissal.

Defendants assert that Plaintiff was not entitled to discovery prior to the district court's Rule 12(b)(1) dismissal and that she did not ask for it.[4] In essence, Defendants unapologetically applaud a district court order that dismisses Plaintiff's claims on the basis that she could not do the impossible—which is, *at the pleading stage*, identify all the lot numbers and/or batches affected by the benzene contamination before conducting discovery. Certainly, contrary to Defendants

---

[4] As Defendants are well aware, Plaintiff's propounded written discovery upon Defendants on two separate occasions, but those efforts were rebuffed due to the failure to effectuate a Rule 26 conference. Hence, why Plaintiff's counsel asserted during the hearing on the motion to dismiss that Plaintiff was forced "to rely on what is in the public record because discovery is not allowed to begin." (4-ER-847).

*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

claims, the ability to conduct discovery on the extent of the benzene

contamination, including identification of lot/batch numbers, would yield

information relevant to critical matters at issue because the absence of such factual

allegations was a reason for the district court's dismissal based on standing. (1-ER-

007) (finding "Plaintiff's injury is not sufficiently particularized because . . .

Plaintiff does not allege that Valisure's discovery can be extrapolated across all of

Defendants' products or to a specific batch which could have ended up in her

purchased sunscreen").

Viewing the allegations in the light most favorable *to Plaintiff*, "it is

plausible to conclude that, if one specific batch of the same sunscreen product

contains benzene, then other batches of the very same product line are

manufactured in the same manner and—notwithstanding the possibility of

variability from batch to batch—are likely to contain benzene." *Clinger*, 2023 WL

2477499 at *5. As a result, Plaintiff's allegations are not speculative. They are

plausible allegations asserted on "information and belief" based on publicly

available information at the time of pleading, without the benefit of discovery. (3-

ER-359). "A plaintiff is not required to plead [her] evidence 'or specific factual

details not ascertainable in advance of discovery.' *Danielson v. Chevron Corp*.,

1993 WL 515872 at *2 (N.D. Cal. Dec. 6, 1993) (quoting *Gibson v. United States*,

781 F.2d 1334, 1340 (9th Cir. 1986), *cert. denied*, 479 U.S. 1054 (1987)).

*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

*See also Soo Park v. Thompson*, 851 F.3d 910, 928-929 (9th Cir. 2017) ("The *Twombly* standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible").

Defendants' additional citation and reliance on the Eight's Circuit's non-binding decision in *Wallace* and its progeny is unavailing. *See, e.g.*, *Wallace v. ConAgra Foods*, Inc., 747 F.3d 1025 (8th Cir. 2014); *Schloegel v. Edgewell Personal Care Co*., 202 WL 808694 (W.D. Mo. Mar. 16, 2022); *Blackburn v. Champions Petfoods USA, Inc*., 2021 WL 9682169 (S.D. Iowa Aug. 12, 2021).

Notably, courts in the Ninth Circuit have described the holding in *Wallace* as a "bizarre result," *Dana v. Hershey Co*., 180 F.Supp.3d 652, 663 (N.D. Ca. 2016), *aff'd* 730 F. App'x 460 (9th Cir. 2018). Others have similarly observed that *Wallace* "does not reflect the law of this Circuit" with respect to establishing standing for economic injury. *Rice-Sherman v. Big Heart Pet Brands, Inc*., 2020 WL 1245130 at *6 (N.D. Cal. Mar. 20, 2020). *See also McCoy v. Nestle USA, Inc*., 173 F.Supp.3d 954, 964 (N.D. Cal. 2016) (holding plaintiff had standing under *Hinojos*, and noting that "[t]his Court respectively disagrees with [the] result [in *Wallace*]").

*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

For instance, in *Hershey Co*., the court specifically rejected the holding in

*Wallace* in favor of the binding Ninth Circuit precedent set forth in *Hinojos*:

> [I]t would be a bizarre result if sellers advertising food as
> halal or kosher, diamonds as conflict-free, or products as
> union-made could knowingly mix compliant and
> noncompliant products with impunity so long as there was
> no way for a buyer to trace the specific item he or she
> purchased back to the source. The Eighth Circuit has
> nevertheless adopted that rule. *See Wallace v. ConAgra
> Foods, Inc.*, 747 F.3d 1025, 1030–31 (8th Cir.2014).
> …This Court respectfully disagrees with that result [in
> *Wallace*]. In this Court's view, if a customer has paid a
> premium for an assurance that a product meets certain
> standards, and the assurance turns out to be meaningless,
> the premium that the customer has paid is an actual,
> personal, particularized injury that is cognizable under
> Article III. *See Hinojos*, 718 F.3d at 1104.

*Id*. at 662 n.8.

The Defendants' reliance on standing cases within the Ninth Circuit is

equally unavailing. *See e.g., Bodle v. Johnson & Johnson Consumer Inc*., 2022 WL

18495043 (N.D. Cal. Feb. 24, 2022); *Coffelt v. Kroger Co*., 2018 WL 6004543

(C.D. Cal. Aug. 17, 2018). Unlike the present case, *Bodle* was a personal injury

action in which the plaintiff claimed she developed leukemia after using an

allegedly benzene-contaminated sunscreen product. Here, Plaintiff alleges

economic injury, not personal injury. And, under California law, a plaintiff can

satisfy the economic injury requirement for standing by merely alleging that she

would not have bought the product, or paid less for it, but for the defendants'

17

*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

misrepresentations. *See Hinojos*, 718 F.3d at 1104. Because plaintiff sufficiently alleges that *all* of the sunscreen products have been falsely labeled and advertised, she has standing to pursue claims for *all* the products she purchased. Opening Br. at p. 22-23. Further, nowhere in the *Bodle* court's decision is it mentioned, let alone addressed, that plaintiff lacked standing to pursue her economic loss claims. Instead, the claims were dismissed because plaintiff "failed to establish injury or causation as required" in personal injury matters. *Bodle*, 2022 WL 18495043 at *1.

In *Coffelt*, the court entered summary judgment for defendant because plaintiff had not presented sufficient evidence that the product he purchased exposed him "to a dangerous substance (*i.e.*, that the product he bought was contaminated)." *Id*. at *11. Unlike the plaintiff in *Coffelt*, Plaintiff does allege that the Ultra Sport 50 sunscreen product she purchased is contaminated with benzene. Moreover, unlike in *Coffelt*, the Plaintiff supports these allegations with test results obtained from her own product and independent testing conducted by Valisure with respect to the other Banana Boat sunscreen products she purchased. Finally, *Coffelt* was decided in the context of a motion for summary judgment, not a motion to dismiss as in the present case.

The unpublished case of *Pels* is also distinguishable. *See Pels v. Keurig Dr. Pepper, Inc.*, 2019 WL 5813422 (N.D. Cal. Nov. 7, 2019). Defendants cite *Pels* as an example of a court dismissing claims that "seek to generalize the results" from

18

*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

testing on similar products. Reply Br. at 47. In *Pels*, the plaintiff relied on a Consumer Reports article with published test results and defendant Keurig's own testing to allege that the water he purchased was contaminated with arsenic. Contrary to Defendants' representation, the *Pels* court specifically *rejected* Keurig's claim that relying on Consumer Reports' testing was insufficient. In distinguishing *Pels* from another case (*Gaminde*) in which the plaintiff "relied solely" on one study, the court stated, unlike in *Gaminde*, "[h]ere, plaintiff [*Pels*] relies on a Consumer Reports article *and* Keurig's own testing." *Id*. at *4 n.3 (emphasis added).[5] Thus, plaintiff's reliance on the Consumer Reports article was *not* insufficient for purposes of Article III standing when combined with Keurig's own test results.

Similarly, in the present case, Plaintiff relies on her own test results *and* testing conducted by Valisure to plausibly allege that the sunscreen products she purchased were in fact contaminated or risked being contaminated with benzene. Of course, given that Plaintiff was prohibited from conducting discovery prior to the parties Rule 26(f) conference, Plaintiff did not have the benefit of Defendants'

---

[5] The *Pels* court also distinguished *Wallace, supra,* holding that, "[i]n *Wallace*, the plaintiffs only alleged that some of the products sold by defendant were mislabeled. Here, plaintiff alleges that all Peñafiel Water fails to comply with the FDA [labeling] standards." *Pels*, 2019 WL 5813422, at *4 n.3. Likewise, here, Plaintiff alleges that *all* of the sunscreen products have been falsely labeled and advertised.

own test results when drafting the SAC, which is why the district court's dismissal due to Plaintiff's failure to identify the "specific batch[es]" of contaminated sunscreen products constitutes error.

Defendants next seek to distinguish *Clinger* on the basis that the court "mistakenly relied" on *John v. Whole Foods Market Group, Inc*., 858 F.3d 732 (2d Cir. 2017) for the proposition that plaintiffs are not required to allege that the products they purchased contained benzene, but instead may generally allege facts, accepted as true, that make plaintiff's alleged injury plausible. Reply Br. at 49. In *John*, the plaintiff alleged that an FDA investigation showed that "Whole Foods packages of cheese and cupcakes were systematically and routinely mislabeled and overpriced, and John regularly purchased Whole Foods packages of cheese and cupcakes throughout the relevant period." *Id*. at 737. The court held: "Taking these allegations as true and drawing all reasonable inferences in his favor, it is plausible that John overpaid for at least one product," thus satisfying the "low threshold" required to plead injury-in-fact. *Id*. The court further noted that "target discovery might show" whether these claims may ultimately be supported. *Id*.

Here, Plaintiff alleges that she "purchased numerous Banana Boat sunscreen brand products" between 2017 and 2020. (3-ER-360). Plaintiff further alleges that one of the sunscreen products she purchased (Ultra Sport 50) is contaminated with 0.29 ppm benzene, and testing conducted by Valisure supports the inference

*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

that other sunscreen products she purchased (e.g. Ultra Sport 100) are also contaminated with benzene. (3-ER-362-363). Moreover, consistent with the holding in *John*, Plaintiff has alleged that *all* of the sunscreen products are mislabeled, meaning that the mislabeling is "systematic" and "routine" consistent with the holding in *John*. (3-ER-370-371; 3-ER-379).

In seeking to establish that Plaintiff's allegation of benzene contamination remains speculative, Defendants assert that they "do not admit that any of its sunscreen products contain benzene." Reply Br. at 51. But that assertion makes no sense. Defendants have already "admitted" that its sunscreen products contain benzene. As alleged in the SAC, in 2021 and 2022, Defendants voluntarily recalled Banana Boat aerosol sunscreen products on the basis that "unexpected levels of benzene" were found in samples of the products. (3-ER-371-372).

Finally, Defendants contend that the Ninth Circuit has not formally adopted the findings from the majority of the courts in this circuit that have held or suggested that a plaintiff may establish standing for products not purchased so long as the products are sufficiently or substantially similar. *See, e.g.*, *Iglesias v. Arizona Beverages USA, LLC*, 2023 WL 4053803 at *4-5 (N.D. Cal. June 16, 2023); *LeGrand v. Abbott*, -- F. Supp. 3d --, 2023 WL 1819159 at *5 (N.D. Cal.

*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

Feb. 23, 2023); *Maisel v. S.C. Johnson & Son, Inc*., 2021 WL 1788397 at *4 (N.D. Cal. May 5, 2021); *Miller v. Ghirardelli Chocolate Co*., 912 F. Supp. 2d 861, 868 (N.D. Cal. 2012); *Anderson v. Jamba Juice Co*., 888 F. Supp. 2d 1000, 1006 (N.D. Cal. 2012). As noted in *Cimoli*, "[a]lthough the Ninth Circuit has not directly addressed 'substantial similarity' for purposes of consumer fraud-based class actions, district courts, driven by *Armstong*, have taken a broad approach." *Cimoli v. Alacer Corp*., 546 F. Supp. 3d 897, 907 (N.D. Cal. 2001) (citing *Armstrong v. Davis*, 275 F.3d 849, 867 (9th Cir. 2001). In *Armstrong*, the Ninth Circuit addressed a class action brought by prisoners and parolees asserting various categories of disability. Over defendant's objection, the court held that disabled plaintiffs had standing to bring claims on behalf of the proposed class even where class members' disabilities and experienced harms were not identical. *Id*. The court explained: "the named plaintiffs all established the same injury: that the Board propounded a policy and engaged in a practice that denied them their rights under the ADA, and harmed them by preventing them from attending, communicating at, or comprehending parole and parole revocation hearings." *Id.* Accordingly, the Ninth Circuit held that the plaintiffs had standing because the named plaintiffs "suffered from the same injurious conduct; each incurred the same injury; and each [was] seeking the same relief." *Id*.

*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

Consistent with *Armstrong* and its progeny, Plaintiff has standing to assert claims for products she did not purchase because, as alleged, all of sunscreen labels are marketed in substantially the same way—as sunscreen—and all fail to include any warning that the products contain or may contain benzene. (3-ER-379). Thus, the misleading effect of all the sunscreen products are substantially the same, and each is seeking the same relief. As noted in *Anderson*, if the products are sufficiently similar, "any concerns regarding material differences in the products can be addressed at the class certification stage." *Anderson*, 888 F. Supp. 2d at 1006.

## CONCLUSION

For the foregoing reasons, the Court should reverse the district court's order of dismissal and remand this suit for further proceedings.

Dated: August 4, 2023                    Respectfully submitted,

/s/ R. Jason Richards
R. Jason Richards
Aylstock, Witkin, Kreis &
Overholtz, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone (850) 202-1010
Facsimile (850) 916-7449
Email: jrichards@awkolaw.com

*Counsel for Plaintiff-Appellant*

23

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 23-55116

I am the attorney or self-represented party.

**This brief contains** | 5,410 | **words,** including | | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated | |.

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/R. Jason Richards | **Date** | August 4, 2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                                                 *Rev. 12/01/22*

24

*Bowen v. Energizer Holdings, Inc., et al. – No. 23-55116*

**CERTIFICATE OF SERVICE**

I certify that on August 4, 2023, Plaintiff- Appellant, Beth Bowen's Reply Brief was electronically filed with the clerk of the court for the U.S. Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system. All participants in the case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

Dated: August 4, 2023

Respectfully submitted,

/s/ R. Jason Richards
R. Jason Richards
Aylstock, Witkin, Kreis
& Overholtz, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone (850) 202-1010
Facsimile (850) 916-7449
Email: jrichards@awkolaw.com

*Counsel for Plaintiff-Appellant*